Joseph L. Weinfeld and Lillian Weinfeld, Husband and Wife v. Commissioner.
Weinfeld v. Commissioner
Docket No. 70346.
United States Tax Court
T.C. Memo 1961-17; 1961 Tax Ct. Memo LEXIS 333; 20 T.C.M. (CCH) 70; T.C.M. (RIA) 61017; January 26, 1961
*333 Petitioner, a traveling salesman, recorded his traveling expenses daily in a diary. Held, the diary was substantiation for some of the expenditures and other expenditures were substantiated by his testimony as to mileage traveled. Joseph L. Weinfeld, pro se, 45 Cottage Lane, Weymouth, Mass. Lawrence A. Wright, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined a deficiency in petitioners' *334 income tax for the year 1955 in the amount of $1,203.74. The issue is whether petitioners are entitled to a deduction of $7,248.14 for travel expenses for the year 1955. Findings of Fact Joseph L. Weinfeld, hereinafter called petitioner, and his wife Lillian, live in Weymouth, Massachusetts, and they filed their joint income tax return for the year 1955 with the district director of internal revenue for the district of Massachusetts at Boston, Massachusetts. Petitioner was a traveling salesman or manufacturer's representative who sold the products of the manufacturers he represented on a commission basis. During the year 1955 he represented the Hamilton Glass Company of Chicago, the Monarch Metal Products Corporation of Chicago, and the Daylight Company of Philadelphia. His territory during said year included Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, Connecticut, New Jersey, Delaware, District of Columbia, northern Virginia, Pennsylvania, New York and eastern Ohio. He called primarily on wholesalers of electrical, plumbing, tile, building materials and lumber chains. He traveled over his territory in his own automobile, paying his own traveling expenses *335 which he recorded daily in a diary. In his income tax return for the year 1955 he took a deduction for said travel expenses in the amount of $7,248.14 which he itemized in a schedule attached to said return, as follows: Automobile Expenses: Depreciation
$ 524.00
Gasoline & Oil & Grease
1,260.55
Insurance
147.00
Licenses
11.50
Parking - Storage
714.00
Repairs
150.53
Tires and Tubes
385.00
Tolls
467.50
Total Automobile Expenses
$3,660.08
Personal Use 10%
366.01
Allowable Automobile Expenses
90%
$3,294.07
Hotel and Rooms
1,768.50
Meals (away from home)
1,486.25
Postage
75.00
Supplies
130.00
Telephone and Telegraph
430.32
Commissions
64.00
Total Travel Expenses
$7,248.14
Respondent disallowed the traveling expense deduction (and other deductions not now in issue) for lack of substantiation. By an amendment to his petition filed at the trial petitioner claimed a capital loss carry-over in the amount of $1,000 based on an alleged loss on stock he had held in Allied Photographic Laboratories, Inc. which it was claimed became worthless in 1951. Respondent's determination of deficiency was explained in his notice, as follows: Since *336 you failed to reply to a request for substantiation of deductions claimed for business expenses - they have been disallowed. Opinion The only issue is as to that portion of the business expenses, called travel expenses, in the sum of $7,248.14. Petitioner tried his own case. He claims the deduction under section 162(a)(2) of the Internal Revenue Code of 1954. His burden is to substantiate his claim, travel expenses, in some acceptable manner. Petitioner was a manufacturer's representative who traveled extensively in some dozen eastern states selling glass products on commission. He testified that he traveled away from home about 85 per cent of the time; that he traveled about 85,000 miles during 1955 in his own automobile; and that the bulk of his expenses were paid in cash inasmuch as checks were usually not acceptable in the various states in which he traveled, in motels, gas stations and restaurants. He stated that he recorded these expenditures in a diary which he introduced in evidence. Petitioner relies almost entirely upon this diary to substantiate the expenses which he claims as a deduction. Respondent argues, in effect, that the diary should *337 not be considered at all because it is an improper manner of substantiating the expenses in question. Each page of the book bears a printed heading showing each day of the week, and month, for all of the days in 1955. Petitioner testified he recorded in this book his daily travel expenditures for each meal, each night's lodging, telephone calls, postage, tolls, and all of his automobile expenses, including fuel and repairs. He testified he recorded the expenditures the same day as made except in a few instances when he jotted down the expenditures on a slip of paper and entered them in the diary the next day. The diary was admitted in evidence over respondent's objection of hearsay and on cross-examination petitioner was asked no questions with respect to the items recorded therein except a few questions having to do with transportation expenses. It was brought out on cross-examination that the diary understated toll charges on two days, as shown by toll receipts for said days, which receipts had also been introduced by petitioner. It was also brought out on cross-examination that during part of 1955 petitioner had a few oil company credit cards and that he sometimes charged gasoline *338 purchases at such company's filling stations. He introduced some 17 canceled checks to oil companies which he said were for such credit purchases. The evidence is a little confusing but it fairly appears that he was saying that the item for gasoline, oil and grease ($1,260.55) appearing on his return, was not the sum of the daily entries for such purchases in the diary. Also, some of his automobile repairs, when made at his home, were not recorded in the diary. The only inquiry respondent made on cross-examination with respect to the other entries in the diary were were with respect to hotel and motel items. Petitioner introduced 26 canceled checks to hotels and motels which correspond with the expenditures as recorded in the diary as to dates and amounts. Petitioner was asked why he did not always record the name of the motel where he stopped instead of making such entries as "Motel (outside Niagara Falls)" and "Motel (outside Camden)". Petitioner merely answered that he made no special note of the motels where he stopped. Respondent's whole argument with respect to the diary is contained in a few lines in his two page argument on the travel expense issue. It consists of the general *339 charge that the diary is unreliable and petitioner's testimony with respect to the diary was "inherently improbable, inconsistent, and, on occasions, contradictory", and the diary "has no probative evidentiary value and should be disregarded by the Court." At trial and again on brief respondent pointed to the relatively large amount of travel expense ($7,248.14) as compared with the correspondingly small amount of business receipts ($8,919.91) reported on petitioner's return which reflected an adjusted gross income of $1,562.41 and no resulting tax liability for the year in question. Petitioner explained this by testifying that he actually had written "a considerable amount of business, and for the amount of business that was written, the amount of expenses was abnormally small. However, in the year 1955, the glass industry was plagued by a very long and continued glass strike; and as a result of that strike, almost 95 per cent of the orders * * * were not filled and canceled * * *". Petitioner also testified that he borrowed money from his sister and mother during 1955 to pay his living expenses. Should the diary be accepted as an adequate form of substantiation of petitioner's *340 travel expenses? We think that it should. in Section 1.162-17(d)(2), Income Tax Regs. 1954 Code provides, part: One method for substantiating expenses incurred by an employee in connection with his employment is through the preparation of a daily diary or record of expenditures, maintained in sufficient detail to enable him to readily identify the amount and nature of any expenditure, and the preservation of supporting documents, especially in connection with large or exceptional expenditures. * * * This provision was added to respondent's regulations in 1958 and so is not specifically applicable here. However, an examination of the lineage of respondent's published requirements for substantiation of traveling expenses clearly shows that over the years they have become, if not more strict, at least considerably more specific. [1] It fairly appears that petitioner has literally complied with respondent's 1958 regulations some three years in advance of their issuance. Therefore, we do not think, on the record presented, the diary should be entirely disregarded. Indeed, we accept it as an adequate way to substantiate petitioner's travel expenses, with the *341 exceptions discussed below. *342 One more statement of a general nature should be added. Petitioner testified that the items comprising the travel expense deduction claimed on hsi return were, with the exception of gasoline and automobile repairs, merely the totals of the daily entries in the diary for expenditures in such categories. The diary records travel expenses for 300 days with well over 2,000 separate items. The record shows that the diary was turned over to respondent long before trial, and, of course, after its admission in evidence it was available to respondent for audit. Respondent makes no argument based on an audit of the diary and, in fact, no argument that the diary would not substantiate the items it records if it be considered substantiating evidence. In short, there is no question in the case about the accuracy of the totals transcribed from the diary to petitioner's tax returns. But though we accept the diary as a proper manner by which petitioner may show his travel expenses, we think it is necessary to discuss and in some instances to modify the amounts which petitioner claimed as deductions. Turning now to the itemized list of travel expenses shown in our findings of fact which petitioner *343 took as deductions, we find a total of "Allowable Automobile Expenses" of $3,294.07. This figure is the total of the items appearing above it, less 10 per cent for personal use of the car. Petitioner testified the item for gasoline, oil and grease ($1,260.55) is partly made up from the diary entries, and checks for credit purchases. As stated earlier, the record is rather confused as to this item. Also petitioner had but few toll receipts ($10.75), although he testified he was always given such receipts but he did not save them. Without deciding whether the diary and other documentary evidence substantiate each of the items that go to make up his deduction for car and transportation expense in the total amount of $3,294.07, we think the whole record substantiates that figure. Petitioner testified he traveled 85,000 miles in the year in question. There seems to be no question that he traveled extensively, as stated. The diary records travel expenses for 300 days during 1955. The 85,000 miles traveled at a total transportation cost of $3,294.07 would mean a rate of less than four cents a mile. Respondent makes no argument that petitioner's testimony with respect to his total miles *344 traveled should not be accepted. But even if the 85,000 miles be considered an estimate and somewhat favorable to petitioner, its reduction by 20,000 miles would mean a transportation cost of less than six cents a mile. Without deciding whether the diary entries are sufficient substantiation for petitioner's automobile travel expense, we hold the record substantiates total automobile transportation expense in the sum of $3,294.07. We will group the following items for discussion: Hotel and rooms
$1,768.50
Meals (away from home)
1,486.25
Postage
75.00
Telephone and telegraph
430.32
The above items were, according to petitioner's testimony, the total sums of cash expenditures recorded daily, or almost daily, in the diary, with the exception of a few checks given to hotels and motels as earlier stated. Of these items, respondent would now allow only $146.33 substantiated by 27 canceled checks to hotels and motels. This means respondent allows the diary items only if the items are substantiated by other documentary evidence. There is nothing about the diary entries that would suggest they are false. Petitioner was not questioned as to any of these items as they *345 appear in the diary as to amounts. They are the kind of expenditures where cash is usually used and receipts are not usually given. Certainly it can be said generally that such diary entries of the meals and lodging expense seem to be in compliance with respondent's direction to travelers. It is true respondent cannot, by independent investigation, verify such expenditures, but that is not grounds for disallowing them entirely. Respondent, by his rulings quoted earlier, seems to recognize travelers have to make cash expenditures which will be considered substantiated if properly recorded. We hold all of the above items are properly substantiated. This leaves the items for supplies ( $130) and commissions ( $64). Whether the item of supplies is travel expense, we do not know. The item is entirely unexplained in the evidence. Of this amount, at trial respondent conceded the sum of $18.30 for the purchase of Christmas cards, evidently for customers. We allow no more. The item for commissions is clearly not travel expense. But it was considered a business expense and no point is made that it was placed in the category of travel expense. At the trial respondent conceded it was substantiated *346 to the extent of $45.44. We allow no more. By an amendment to his petition filed at the trial petitioner claimed a capital loss carry-over based on stock held by him in the Allied American Photographic Laboratories, Inc., which allegedly became worthless in 1951. The amendment indicates this is an alternative claim to be used "if necessary" to defeat respondent's determination of deficiency. Since we have held in the main for petitioner on the travel expense issue we will not detail the evidence on this issue. However, we hold on the issue petitioner failed to sustain his burden, as to the year of the loss, the amount of the loss, and the availability of the loss for deduction in the year in issue. Decision will be entered under Rule 50. Footnotes
1. Regulations on traveling expenses were first issued in Regulations 62, Art. 101(a) which contained the following provision: Claim for the deductions referred to herein must be substantiated, when required by the Commissioner, by records showing in detail the amount and nature of the expenses incurred. This language was carried forward through successive regulations and appeared virtually unchanged in Regs. 118, sec. 39.23(a)-2(h). Rev. Rul. 54-195, 1954-1 C.B. 47, issued May 25, 1954, which was described as a guide to be used in determining the amount of travel expenses, recognized that: deductions which are based upon a substantial number of small items of expenditure * * * often are not susceptible of complete substantiation by documentary evidence. * * * In connection with * * * items such as traveling * * * expense, the examining officer should * * * [consider] the papers or records essential to adequate substantiation, and the weight to be accorded oral statements and explanations. * * * Disallowing amounts claimed for such items merely because there is available no documentary evidence which will establish the precise amount beyond any reasonable doubt ignores commonly-recognized business practice as well as the fact that proof may be established by credible oral testimony. * * * Rev. Rul. 54-497, 1954-2 C.B. 75, issued later in 1954 stated: The only wholly satisfactory and certainly the most desirable method * * * is for taxpayers to maintain a record of such expenses in order to substantiate their claimed deductions. * * *
To "substantiate" his expenses, a taxpayer is not required to secure, retain, and produce receipts for each meal and for each night's lodging. * * * An adequate record, however, should be maintained day by day and should be kept in sufficient detail to determine the taxpayer's correct tax liability. Ordinarily, such a record should at least indicate the dates, duration and destination of each trip during which the taxpayer was required to obtain lodging or necessary rest while "away from home"; the amounts paid for such lodging or quarters; and the actual cost of each meal consumed on such trips. * * * Regulations were first published under section 162 of the 1954 Code in 1958 in T.D. 6291, 1958-1 C.B. 63. Sec. 1.162-2 Income Tax Regs. specifically dealt with traveling expenses but contained no mention of substantiation. Sec. 1.162-17, Income Tax Regs., was added by T.D. 6306, 1958-2 C.B. 64, and it dealt specifically with the reporting and substantiation of traveling and other business expenses. A portion of it has been set forth in the opinion above. In December 1959 the Internal Revenue Service indicated that more detailed reporting of travel and entertainment expense deductions would be required in the future. T.I.R. 198 (Mertens Rulings, Vol., MA 262).↩